## PACK v. DUNN

No. 5441. Decided November 19, 1934. (37 P. [2d] 790.)
Rehearing Denied January 7, 1935.

*L. A. Miner,* of Salt Lake City, for appellant.

*J. E. Evans* and *W. H. Newcomb,* both of Ogden, for respondent.

FOLLAND, Justice.

This action was brought for money alleged to have been loaned to defendant by plaintiff and not repaid as promised. Defendant's answer was a general denial. In his testimony he admitted receiving the money, but said it was given to, and received by, him as a gift. From a judgment for plaintiff, defendant appeals. Appellant's assignments of error may be grouped under three general heads: (1) Alleged

error of the trial court in admitting in evidence Plaintiff's Exhibit D, an original ledger sheet of J. A. Hogle & Co., a brokerage house, showing defendant's purchases and sales of stock at about the date of the alleged loan; (2) refusal to admit in evidence defendant's Exhibit 1, being a compilation of the J. A. Hogle & Co. record of the brokerage transactions of defendant, and the striking of certain testimony in explanation thereof; and (3) that the evidence is insufficiant to support the findings and judgment.

Plaintiff testified that on December 1, 1928, at the Deseret Gymnasium the defendant said:

" 'I have to raise Two Thousand Dollars between now and Monday.' He said 'I have fifty shares of Andes Copper stock. If you will loan me the Two Thousand Dollars, as soon as that stock gets here from New York I will give you that stock, and you can pay me the difference between what it is selling for now and that Two Thousand Dollars.' At that time that would have been about Five Hundred Dollars. As I remember, it was selling for about $52.00 a share. I said: 'I don't want the Andes Copper Stock. I bought some at $39.00 and I sold it. If you have to raise some money sell at the market, and you send me the check for the Two Thousand, and it will be okeh' or 'all right.'

'Q. Then what did you do? A. I wrote him out the check. * * *'"

The defendant testified that he had about one and one-half years before given plaintiff a "tip" on a certain mining stock which resulted in plaintiff making a profit of about $18,000, and that plaintiff had at various times expressed a desire "to do something" in return for the favor shown him. Defendant's version of the conversation at the Deseret Gymnasium is as follows:

"When I got dressed and went out into the lobby he was there and he had this check that he said he wanted to give to me in appreciation of what I had done, and he said if I would buy Andes stock with it that I would make myself some money. I told him at that time that I did not want to obligate myself in any way to him or any other person relative to giving them information, that I was only glad that he had made money on the tip that I had given him relative to the stock.

"Q. Did you take that check? A. I. did, yes, sir.

"Q. What did you do with it? A. I bought Andes Copper stock with it.

"Q. Had you already bought any Andes Copper Stock? A. No, sir.

"Q. That was the first stock that you bought of Andes Copper? A. Yes, sir.

"Q. Did you in that conversation tell him that you had to have two thousand dollars to meet an obligation at the bank before Monday morning? A. No, sir, I did not.

"Q. Did you ever tell him that you were obligated to the bank and needed any money? A. No, sir.

"Q. You stated that you did not own any Andes Copper on December first, 1928, prior to the time that he had given you this check? A. No, sir.

"Q. You say you bought Andes Copper stock with it? A. Yes, sir."

On cross-examination he testified:

"Q. Where did you buy this Andes Copper stock? A. If I am not mistaken it was J. A. Hogle & Company.

"Q. How many shares did you buy? A. I think there were fifty shares.

"Q. When did you order the stock? A. About the sixth or seventh of December."

In rebuttal the plaintiff offered in evidence Exhibit D, which was an original ledger sheet from the books of J. A. Hogle & Co., containing a record of the transactions between defendant Dunn and the company with respect to the sale and purchase of certain stocks, including Andes Copper Company stock. In offering this sheet in evidence, counsel for plaintiff said to the court:

"Mr. Evans (counsel for plaintiff) : If the Court please, Mr. Dunn took the stand and testified that when he saw Dr. Pack on December first, Dr. Pack had a check for two thousand dollars made out to Mr. Dunn and he said: 'Here, take this and buy Andes Copper stock and it will put you on easy street.' He said he never owned any Andes Copper before that and he went out immediately and bought Andes Copper. His transactions with Hogle & Company show that he had been buying Andes Copper through November, that he bought some on December first. He bought Chile Copper and so on. On December

third he bought Andes Copper. * * * We offer it in evidence particularly for the entire (entry) of Andes Copper stock so that the Court may know."

There is not anything in the record to show that the exhibit was used for any other purpose than that stated by counsel in offering it. That the trial judge so considered it is indicated by what he said on motion for a new trial:

"* * * And the court is interested in your argument with respect to the alleged error of the court in admitting and receiving in evidence plaintiff's Exhibit 'D' for the reason that the court took the evidence contained in said Exhibit 'D' into consideration in entering judgment against the defendant, particularly that part of it which showed a sale of Andes Copper Stock short, and the purchase and receipt of such stock."

The first of the errors alleged, that of admission in evidence of Plaintiff's Exhibit D, may be passed without discussion, for the reason that no exception was taken to the court's ruling. Prior to the amendment of the law contained in R. S. Utah 1933, 104-39-2, which provides: "All rulings on objections to or motions to strike out, evidence, are deemed excepted to," this court was not authorized to review rulings of the trial court in civil cases in the admission or rejection of evidence, where, by the record, no exception was shown to have been taken to such ruling. *Knapp* v. *Knapp*, 73 Utah 268, 273 P. 512. The trial of this case took place before R. S. Utah 1933 was adopted. We may say, however, that we find no error by the court in admitting the exhibit limited in purpose as it was by statements of counsel.

The next error alleged is the refusal of the trial court to admit in evidence defendant's proposed Exhibit No. 1. This was a mere compilation and abstract of the information contained in Plaintiff's Exhibit D which had already been admitted in evience. This compilation, however, contained a list of the stocks wherein Dunn was "long" and those in which he was "short." Defendant's purpose was to show there were sufficient stocks "long" being

held as security by Hogle & Co., so that Dunn was really not hard pressed for money at the time. The testimony was that the same information was contained in Exhibit D already admited, and that this was a mere bookkeeper's abstract taken from the ledger sheet. Defendant could not be prejudiced by its exclusion, since the information it contained was already before the court. In his argument in this court defendant concedes that evidence tending to prove that defendant had resources available at the time is irrelevant to the issue of whether or not a loan was made. He cites in support the following cases: *Burke* v. *Kaley*, 138 Mass. 464; *Hollywood* v. *Reed*, 55 Mich. 308, 21 N. W. 313, and *Atwood* v. *Scott*, 99 Mass. 177, 96 Am. Dec. 728. He contends, however, that Exhibit 1 should have been admitted in surrebuttal because the court drew the inference that defendant was in a "jam" on December 1st in his transactions with Hogle & Co. by reason of selling Andes Copper stock "short." There is not anything in the record to justify this conclusion. As already indicated, the entries on Exhibit D were admitted by the court in rebuttal of defendant's testimony that he had purchased Andes Copper stock from J. A. Hogle & Co. on December 6th or 7th, and that he had not previously purchased any of this stock. The testimony of the witness with respect to the proposed exhibit was stricken by the court. No prejudice resulted to defendant by such ruling, since the relevant facts were already before the court, although it would have been harmless and probably better practice, the case being tried without a jury, to have let the testimony stand for what it was worth. There is no merit to these assignments of error.

It is next contended that the court erred in making its finding that defendant agreed to pay the $2,000 borrowed within ten days in that there is no evidence to support the finding. The versions of plaintiff and defendant of the conversation at the Deseret Gymnasium are in sharp conflict with each other. The court chose to believe the version of plaintiff. According to plaintiff's testi-

mony, defendant borrowed the money and agreed to pay it within a few days, when he should receive a block of fifty shares of Andes Copper stock from New York. The evidence shows that fifty shares of Andes Copper stock was by the defendant delivered to Hogle & Co. on the 3d of December, two days after the loan was made. This stock was neither turned over to plaintiff nor was it sold in order to obtain money with which to repay him. Defendant did not see fit to make any explanation of these transactions. He cannot now complain that the court drew the inference that this was the stock, referred to in the conversation, which he expected to receive from New York in a few days and out of which the loan would be repaid.

The remaining assignment goes to the point that the evidence fails to show a promise to pay interest. It is true there was no agreement to pay interest, and for that reason no interest should be charged until after default in payment when due. Not only was the money not paid at the time of the receipt of the Andes stock by defendant, but plaintiff testified that he called defendant on the telephone about a week after December 1st to inquire why the loan had not been paid and in effect made demand for payment. The court allowed interest, not from December 1st, but from December 11th, which was after default in payment, and after demand had been made for payment. The rule in cases where the contract does not provide for interest is that interest may be charged after default in payment of the principal sum on the due date. 15 R. C. L. 26.

The findings of the court find sufficient support in the evidence. The judgment is affirmed; costs in favor of respondent.

STRAUP, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and MOFFAT, JJ., concur.